IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF INDIANA,<br><br>        Plaintiffs,<br><br>  v.<br><br>STEEL DYNAMICS, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil No.<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, The United States of America, by authority of the Attorney General of the United States and through the undersigned attorney, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Indiana, acting at the request of the Indiana Department of Environmental Management ("IDEM"), allege:

## NATURE OF THE ACTION

1. This is a civil action brought against Defendant Steel Dynamics, Inc. ("SDI" or "Defendant").

2. The claims in the Complaint arise from the Steel Dynamics Flat Roll Division and Steel Dynamics Iron Dynamics Division facilities near Butler, Indiana, (collectively the "Facility") owned and operated by SDI. The Facility is a steel mini-mill.

3. The United States asserts claims in this action pursuant to Section 113(b) of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7413(b). The United States seeks injunctive relief and civil penalties against SDI for violations of the CAA and its implementing regulations.

4. The State of Indiana asserts claims in this action under § 13-30-1-1 of the Indiana Code ("I.C.") and the rules adopted thereunder and seeks injunctive relief and civil penalties against SDI.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

6. Under 28 U.S.C. § 1367 this Court has supplemental jurisdiction over the state law claims asserted by Indiana pursuant to Rule 326 of the Indiana Administrative Code and the rules adopted thereunder.

7. Venue is proper in this District pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b)-(c) and 1395(a), because the violations at the Facility occurred and are occurring within this judicial district.

## AUTHORITY

8. Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519, and CAA Section 305(a), 42 U.S.C. § 7605(a).

9. Authority to bring this action for the People of the State of Indiana is vested in the Indiana Attorney General. The Indiana Attorney General is the chief legal officer of the State of Indiana, having the powers and duties prescribed by the law, I.C. § 4-6-1-6. Under I.C. § 4-6-3-2 the Indiana Attorney General has charge of and directs the prosecution of all civil actions brought in the name of the State of Indiana or any state Agency. Pursuant to I.C. § 13-13-5-1,

IDEM is charged with the administration and enforcement of the requirements for air pollution control for Indiana for all purposes of the federal Clean Air Act. Pursuant to I.C. § 13-13-5-2, IDEM may take any action necessary to secure for Indiana the benefits of the federal statutes described in I.C. § 13-13-5-1, which includes the federal Clean Air Act, as amended by the Clean Air Act Amendments of 1990.

## NOTICE

10. In accordance with CAA Section 113(a)(1) and (b)(1), 42 U.S.C. § 7413(a)(1) and (b)(1), on February 27, 2015, EPA issued to Defendant a Notice and Finding of Violation ("NOV/FOV") for the violations alleged herein, and provided a copy of the NOV/FOV to the State of Indiana.

11. The 30-day period between the issuance of the NOV/FOV and the commencement of this action required by CAA Section 113(b)(1), 42 U.S.C. § 7413(b)(1), has elapsed. The United States has provided notice of the commencement of this action to the State of Indiana. *See* CAA Section 113(a)(1) and (b), 42 U.S.C. § 7413(a)(1) and (b).

## DEFENDANT

12. Defendant is incorporated in Indiana, and is registered to do business in Indiana as Steel Dynamics, Inc. Defendant maintains its principal office at 7575 W. Jefferson Blvd., Fort Wayne, Indiana 46804-4131.

13. Defendant owns and operates, and at all times relevant to this Complaint has owned and operated, an integrated steel mini-mill, which includes the Flat Roll Division and the Iron Dynamics Division, located at 4500 County Road 59, Butler, DeKalb County, Indiana 46721. The Flat Roll Division and the Iron Dynamics Division operate under separate Title V permits, although IDEM considers the Facility to be a single source.

14. Defendant is a "person" as defined in CAA Section 302(e), 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

15. The purpose of the CAA is to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

### New Source Performance Standards

16. Section 111(b) of the CAA, 42 U.S.C. § 7411(b), requires EPA to publish a list of categories of stationary sources and, within a year after the inclusion of a category of stationary sources in the list, to publish proposed regulations establishing federal standards of performance for new sources within the source category. These emission standards are known as the New Source Performance Standards ("NSPS"). EPA codified these standards at 40 C.F.R. Part 60.

17. Pursuant to Section 111 of the CAA, EPA promulgated the NSPS for Electric Arc Furnaces ("EAF") and Argon-Oxygen Decarburization Vessels Constructed After August 17, 1983 at 40 C.F.R. Part 60, Subpart AAa, 40 C.F.R. §§ 60.270a - 60.276a, on October 31, 1984. 49 Fed. Reg. 43845.

18. 40 C.F.R. § 60.11(d) states that "[a]t all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions." The determination of whether proper procedures have been used shall be made based on the information available to the EPA administrator, including but not limited to "monitoring results, opacity observations, review of operating and maintenance procedures, and inspection of the source." *Id.*

4

**National Emission Standards for Hazardous Air Pollutants**

19. Section 112(b) of the CAA, 42 U.S.C. § 7412(b), establishes a list of 188 hazardous air pollutants ("HAPs") which present a threat of adverse human health effects or adverse environmental effects. According to Section 112(b)(2), EPA must periodically review and, when appropriate, revise the list by rule.

20. Pursuant to Section 112(c) of the CAA, 42 U.S.C. § 7412(c), EPA must publish, and periodically revise when appropriate, a list of all categories and subcategories of major sources and area sources of the HAPs listed in 42 U.S.C. § 7412(b).

21. Pursuant to Section 112(d) of the CAA, 42 U.S.C. § 7412(d), EPA must promulgate regulations establishing emission standards for each category and subcategory of major sources and area sources of HAPs. These emission standards are known as the National Emission Standards for Hazardous Air Pollutants ("NESHAPs"), and are codified at 40 C.F.R. §§ 61 and 63.

22. The NESHAPs apply to specific categories of sources that emit HAPs, including "major sources," "area sources," and "stationary sources." A "major source" is any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit 10 tons of any HAP, or 25 tons per year or more of any combination of HAPs, per year. 42 U.S.C. § 7412(a)(1). An "area source" is any stationary source of HAPs that is not a major source. 42 U.S.C. § 7412(a)(2). A "stationary source" is any building, structure, facility, or installation that emits or may emit any air pollutant. 42 U.S.C. § 7412(a)(3) (by reference to 42 U.S.C. § 7411(a)(3)).

23. Under Section 112(i)(3) of the CAA, no person may operate a source in violation of the NESHAPs. 42 U.S.C. § 7412(i)(3). Therefore, a violation of the NESHAPs is a violation of the Act.

24. Pursuant to Section 112 of the CAA, EPA promulgated NESHAPs for EAF steelmaking facilities (NESHAP Subpart YYYYY) at 40 C.F.R. § 63, Subpart YYYYY, 40 C.F.R. §§ 63.10680-63.10692, on December 28, 2007. 72 Fed. Reg. 74,111.

25. The NESHAP Subpart YYYYY applies to owners or operators of EAF steelmaking facilities that are area sources of HAP emissions. 40 C.F.R. § 63.10680(a). Subpart YYYYY applies to each new or existing affected source. The affected source is each EAF steelmaking facility. 40 C.F.R. § 63.10680(b). An affected source is existing if the owner or operator commenced construction or reconstruction of the source on or before September 20, 2007, 40 C.F.R. § 63.10680(b)(1), and an affected source is new if the owner or operator commenced construction or reconstruction of the affected source after September 20, 2007, 40 C.F.R. § 63.10680(b)(2).

26. 40 C.F.R. § 63, Subpart YYYYY applies to electric arc steelmaking facilities. Table 1 of this subpart states that the requirements listed in 40 C.F.R. § 63.6(e)(1) apply to the electric arc steelmaking facilities subject to subpart YYYYY.

27. 40 C.F.R. § 63(e)(1)(i) states that "[a]t all times . . . the owner or operator must operate and maintain any affected source . . . in a manner consistent with safety and good air pollution control practices for minimizing emissions. During a period of startup, shutdown, or malfunction, this general duty to minimize emissions requires that the owner or operator reduce emissions from the affected source to the greatest extent which is consistent with safety and good air pollution control practices."

### Title V Operating Permit Requirements

28.     Under Section 502(d)(1) of the CAA, each state must develop and submit to EPA a permit program that meets the requirements of Title V. 42 U.S.C. § 7661a(d)(1). Title V of the CAA requires all "major sources" of air pollution to obtain an operating permit including emission limitations and other conditions necessary to comply with applicable CAA requirements. 42 U.S.C. § 76661(a)-(f). A Title V permit consolidates all of a major stationary source's state and federal CAA obligations into one permit. 42 U.S.C. § 7661a(f).

29.     A "major source" is defined as any stationary source, or any group of stationary sources located within a contiguous area and under common control, that may directly emit, or have the potential to emit, 100 tons per year of any air pollutant. 42 U.S.C. § 7661(2); 40 C.F.R. § 70.2. Regulated air pollutants, including particulate matter ("PM"), are defined and listed pursuant to 40 C.F.R. § 70.2.

30.     In accordance with Section 502(b) of the CAA, EPA has promulgated regulations establishing the minimum elements of a Title V permit program to be administered by any air pollution control agency. 42 U.S.C. § 7661a(b). These regulations are codified at 40 C.F.R. Part 70.

31.     The requirements in Part 70 apply to any major source located in a state with whole or partial approval to administer its own Title V permit program, including an area source, subject to a standard or other requirement under Section 112 of the Act, 42 U.S.C. § 7412, which governs HAPs. 40 C.F.R. § 70.3.

32.     CAA Section 502(b) and (d) requires EPA to establish minimum elements of a permit program to be administered by any air pollution control agency, and to approve or disapprove state and local permitting plans. 42 U.S.C. § 7661a(b) and (d). The federal

regulations implementing Title V are codified at 40 C.F.R. Part 70. On November 14, 1995, EPA granted Indiana final interim approval of its Title V permitting program, which became effective on December 12, 1995. *See* 60 Fed. Reg. 57188 (Nov. 14, 1995). Final approval for Indiana's program was effective November 30, 2001. *See* 66 Fed. Reg. 62,969 (Nov. 30, 2001).

33. The Title V program does not impose any new substantive requirements on a regulated source, but requires the source to obtain a permit prior to operation, which contains all the terms and conditions necessary to assure compliance with all the requirements under the Act applicable to the source, including any applicable SIP provisions. 42 U.S.C. §§ 7661a(a) and 7661c(a); 40 C.F.R. § 70.1(b).

34. CAA Section 502(a) makes it unlawful for any person to violate any term or condition of a Title V permit or to operate a major source except in compliance with its Title V permit. 42 U.S.C. § 7661a(a).

## GENERAL ALLEGATIONS

35. At all times relevant to this Complaint, the Defendant has owned and operated the Facility, an integrated steel mini-mill located at 4500 County Road 59 Butler, DeKalb County, Indiana 46721.

36. Defendant's Facility consists of two plants: the Iron Dynamics Division ("IDD") and the Flat Roll Division ("FRD"). IDD produces high-grade liquid pig iron, which is in turn used at FRD to manufacture steel products.

37. At IDD, iron-based substrates are combined with a binder and coal to produce briquettes. These briquettes are charged in a Rotary Hearth Furnace ("RHF"), then fed into a submerged EAF. There, the materials are heated with coke and lime, producing molten pig iron. This molten pig iron is then transferred to the FRD facility.

38. At FRD, the molten pig iron is charged with scrap metal in one of two EAFs, EAF #1 South and EAF #2 North. The molten metal is then transported to a Ladle Metallurgical Furnace ("LMF") within a Ladle Metallurgical Station ("LMS") where additional alloys are added and a final pre-casting temperature is set. FRD has three LMS, each of which contains three LMFs. The metal is then cast and cleaned in a Pickling Line. After pickling, the steel is processed according to customer specifications. EAF #1 South was permitted for construction in 1994 and EAF #2 North was permitted for construction in 1997.

39. SDI is a corporate entity, and therefore meets the definition of "person" in Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

40. SDI is an "owner or operator" of the Facility under Section 112(a)(9) of the CAA, 42 U.S.C. § 7412(a)(9).

41. IDD and FRD are each a "stationary source" within the meaning of Section 112(a)(3) of the CAA, 42 U.S.C. § 7412(a)(3), and are therefore subject to the NESHAPs found at 40 C.F.R. Part 63. IDD and FRD are each a "major source" as defined by Section 112(a)(1) of the CAA, 42 U.S.C. § 7412(a)(1).

42. The operation of the RHF, EAFs and LMFs result in the emission of, among other things, PM. The operation of the Pickling Line results in the emission of, among other things, hydrochloric acid.

43. Emissions from the RHF, EAFs and LMFs are captured and directed to separate dedicated baghouses that are equipped with filter bags. The filtered air is released from the baghouses into the atmosphere through baghouse vents. Emissions from the Pickling Line are controlled by a fume scrubber.

44. In 2012, VH Enterprises, Inc., a third-party hired by SDI, conducted a study of ventilation at the two SDI facilities ("Ventilation Study"). The Ventilation Study stated that emissions were observed escaping the EAF canopy hood at EAF #2 North. The study recommended that SDI modify the canopy hood at EAF #2 North to improve capture efficiency. The LMF Baghouse controls emissions from the LMS. The Ventilation Study also recommended that SDI increase the LMF Baghouse airflow by an additional 100,000 actual cubic feet per minute ("acfm") to improve capture at the LMSs.

## FRD Permits

45. On December 30, 2009, IDEM issued a Part 70 Operating Permit to FRD, No. 033-28134-00043 (2009 FRD Title V Permit).

46. Subsequent to the 2009 FRD Title V Permit, IDEM issued the following permits to the Flat Roll Division plant: Part 70 Operating Permit, No. 033-28510-00043, on February 11, 2011 (February 2011 FRD Title V Permit); Minor Source Modification to a Part 70 Source Permit, No. 033-30828-00043, on September 13, 2011 (September 2011 FRD Title V Permit); Part 70 Operating Permit, No. 033-30847-00043, on November 7, 2011 (November 2011 FRD Title V Permit); Minor Source Modification to a Part 70 Source Permit, No. 033-32483-00043, on February 4, 2013 (February 2013 FRD Title V Permit); Part 70 Operating Permit, No. 033-32660-00043, on April 24, 2013 (April 24th 2013 FRD Title V Permit); Part 70 Operating Permit, No. 033-32147-00043, on April 26, 2013 (April 26th 2013 FRD Title V Permit); Part 70 Operating Permit, No. 033-33268-00043, on August 28, 2013 (August 2013 FRD Title V Permit); Part 70 Operating Permit, No. 033-34479-00043, on May 19 2014 (2014 FRD Title V Permit) (collectively the "FRD Title V Permits").

47. Section D.1.2(a)(1) of the FRD Title V Permits states in part that the PM/PM10 emissions from EAF #1 South shall be controlled by a direct shell evacuation (DSE) system and canopy hood with 100 percent overall capture exhausted to EAF Baghouse 1, with minimum 99.85 control efficiency for filterable PM/PM10, discharging through Stack 01.

48. Condition D.1.2(a)(2) of the FRD Title V Permits states in part that the PM/PM10 emissions from EAF #2 North shall be controlled by a DSE system and canopy hood with 100 percent overall capture exhausted to EAF Baghouse 2, with a minimum 99.85 control efficiency for filterable PM/PM10, which discharges through Stack 92.

49. Condition D.2.1(a) of all permits from the November 2011 FRD Title V Permit through the 2014 FRD Title V Permit states in part that PM/PM10 emissions from the LMS shall be captured by a side draft hood and exhausted to the LMF Baghouse and Stack 61.

50. Condition D.4.5(a) of the February 2011 FRD Title V Permit and September 2011 FRD Title V Permit states in part that the Permittee shall record the flow rate of the packed scrubber used in conjunction with the Pickling Line, at least once per day when the Pickling Line is in operation.

51. Condition D.4.7(a) of the February 2011 FRD Title V Permit and September 2011 FRD Title V Permit states in part that to document compliance with Condition D.4.5-Parametric Monitoring, the Permittee shall maintain records of the once per day pickling line scrubber flow rate during normal operation.

52. Condition C.17(a) of the February 2011 FRD Title V Permit and September 2011 FRD Title V Permit states in part that the records of all required monitoring data, reports, and support information required by that permit shall be retained for a period of at least five years from the date of monitoring sample, measurement, report, or application.

**IDD Permits**

53. IDEM issued IDD a Part 70 Operating Permit, No. T033-12614-00076, on February 19, 2010 (IDD Title V Permit).

54. Condition C.16(a) of the IDD Title V Permit states in part that upon detecting an excursion or exceedance, the Permittee shall restore operation of the emissions unit (including any control device and associated capture system) to its normal or usual manner of operation as expeditiously as practicable in accordance with good air pollution control practices for minimizing emissions.

55. Condition D.1.15(a) of the IDD Title V Permit states in part that when any of the pressure drop readings at the RHF is outside the normal range of 4.0 and 10.0 inches of water or a range established during the latest stack test, the Permitee shall take reasonable response steps in accordance with Condition C.16(a) of the IDD Title V Permit.

**ENFORCEMENT PROVISIONS**

56. CAA Section 113(a)(1) and (3), 42 U.S.C. § 7413(a)(1) and (3), provides that the EPA Administrator may bring a civil action in accordance with CAA Section 113(b), 42 U.S.C. § 7413(b), seeking civil penalties and injunctive relief, whenever, on the basis of any available information, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, among other things: (1) the PSD provisions of the Act, 42 U.S.C. §§ 7470-7479; (2) the federally enforceable provisions of the Indiana SIP, which incorporates 40 C.F.R. § 52.21, or any permit issued under that SIP; and (3) Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued under Title V.

57. Pursuant to Section 113(b), 42 U.S.C. § 7413(b), the Federal Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R.

§ 19.4, the Administrator may seek penalties up to $27,500 per day for each violation of the Act occurring between January 31, 1997 and March 15, 2004; up to $32,500 per day for each violation of the Act occurring between March 16, 2004 and January 12, 2009; up to $37,500 per day for each violation of the Act occurring through November 2, 2015; and up to $102,638 for each violation occurring on or after November 3, 2015.

58. Pursuant to I.C. § 13-17-3-3, Indiana may assess civil penalties for violations of air pollution control laws in accordance with I.C. §§ 13-17-3-5; 13-30-4-1.

## FIRST CLAIM FOR RELIEF
**Failure to maintain good air pollution control practices, 100 percent overall capture, and 99.85 percent control efficiency at EAF #1 South and EAF #2 North**

59. Paragraphs 1 through 58 of this complaint are incorporated herein by reference.

60. The Defendant's 2011 Air Emission Certification Statement submitted to IDEM stated that the capture efficiency at EAF #1 South and EAF #2 North was 98.000% and that the overall control efficiency at EAF #1 South and EAF #2 North for emissions of PM10 and PM2.5 was 97.853%.

61. The Ventilation Study states that emissions were observed escaping the canopy hood at EAF #2 North. Further, the Ventilation Study recommended modifications to improve capture at the EAF canopy hood for EAF #2 North, but SDI did not make the proposed modifications.

62. Conditions D.1.2(a)(1) and D.1.2(a)(2) of the FRD Title V Permits requires SDI to maintain 100 percent overall capture and 99.85 control efficiency at EAF #1 South and EAF #2 North.

63. 40 C.F.R. § 60.11(d) states that "[a]t all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and

operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions."

64. Defendant has violated conditions D.1.2(a)(1) and D.1.2(a)(2) of the FRD Title V Permits by not maintaining 100 percent overall capture and 99.85 control efficiency at EAF #1 South and EAF #2 North and has violated 40 C.F.R. § 60.11(d) at EAF #2 bu not modifying its capture and control systems consistent with the Ventilation Study recommendations.

65. Defendant has violated the terms and conditions of its Operating Permit, which constitutes a violation of the Title V provisions of the Act, 42 U.S.C. §§ 7661–7661f, including Section 502(a) of the Act, 42 U.S.C. §7661a(a).

66. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996 and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note: Pub. L. No. 114-74, § 701, 129 Stat. 599 (2015), the United States may seek injunctive relief and civil penalties of up to $32,500 per day for each violation from March 16, 2004, through January 12, 2009; up to $37,500 per day for each such violation occurring from January 13, 2009 through November 2, 2015; and up to $102,638 per day for each such violation occurring on or after November 3, 2015.

<p style="text-align:center"><b><u>SECOND CLAIM FOR RELIEF</u><br>Failure to Maintain Sufficient Baghouse Capacity at Ladle Metallurgical Stations</b></p>

67. Paragraphs 1 through 58 of this complaint are incorporated herein by reference.

68. Condition D.2.1.(a) of Defendant's November 2011 FRD Title V Permit through the 2014 FRD Title V Permit provides that "emissions from the ladle metallurgical stations . . . and stir stations shall be captured by a side draft hood and exhausted to the LMF baghouse."

69. Defendant failed to maintain sufficient airflow in the LMF Baghouse to effectively capture emissions by the side draft hood.

70. The Ventilation Study found that airflow volume at the LMF Baghouse was 178,000 acfm, a volume proper for two LMS.

71. Defendant is currently operating, and at all times relevant to this Complaint has operated, three stations at the LMS with a baghouse that provides airflow capacity of approximately 178,000 acfm.

72. The Ventilation Study found that the existing ventilation servicing the LMS should be improved by over 100,000 acfm, to approximately 300,000 acfm.

73. Subsequent to receipt of the Ventilation Study, Defendant neither installed a new, larger baghouse servicing the LMS nor otherwise increased the air flow capacity of the existing LMF baghouse to 300,000 acfm.

74. Defendant's failure to increase the airflow servicing the three LMS to 300,000 acfm, violates the terms and conditions D.1.(a) of Defendant's FRD Title V Permit.

75. Defendant has violated and, unless enjoined by the Court, will continue to violate 40 C.F.R. § 63(e)(1)(i) and the terms and conditions of its Title V Permit, including condition D.1.(a) which constitutes a violation of the Title V provisions of the Act, 42 U.S.C. §§ 7661-7661f, including Section 502(a) of the Act, 42 U.S.C. §7661a(a).

76. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996 and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note: Pub. L. No. 114-74, § 701, 129 Stat. 599 (2015), the United States may seek injunctive relief and civil penalties of up to $32,500 per day

for each violation from March 16, 2004, through January 12, 2009; up to $37,500 per day for each such violation occurring from January 13, 2009, through November 2, 2015; and up to $102,638 per day for each such violation occurring on or after November 3, 2015.

## THIRD CLAIM FOR RELIEF
### Failure to Maintain Scrubber Flow Rate Records for Five Years

77. Paragraphs 1 through 58 of this complaint are incorporated herein by reference.

78. Condition D.4.7(a) of the February 2011 FRD Title V Permit and September 2011 FRD Title V Permit provides that the Permittee shall maintain records of the once per day pickling line scrubber flow rate during normal operation.

79. Defendant failed to maintain records of its pickling line scrubber from April 9, 2011 through April 11, 2011, and April 22, 2011 through October 4, 2011.

80. Defendant has violated terms and conditions of its Title V Permit, which constitutes a violation of the Title V provisions of the Act, 42 U.S.C. §§ 7661–7661f, including Section 502(a) of the Act, 42 U.S.C. §7661a(a).

81. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996 and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note: Pub. L. No. 114-74, § 701, 129 Stat. 599 (2015), the United States may seek injunctive relief and civil penalties of up to $32,500 per day for each violation from March 16, 2004, through January 12, 2009; up to $37,500 per day for each such violation occurring from January 13, 2009, through November 2, 2015; and up to $102,638 per day for each such violation occurring on or after November 3, 2015.

## FOURTH CLAIM FOR RELIEF
**Failure to Operate within Established Pressure Drop Range**

82. Paragraphs 1 through 58 of this complaint are incorporated herein by reference.

83. Condition D.1.15(a) of the February 2010 IDD Title V Permit states in part that when any of the pressure drop readings at the RHF are outside the normal range of 4.0 and 10.0 inches of water or a range established during the latest stack test, the Permitee shall take reasonable response steps in accordance with Condition C.16(a) of the February 2010 IDD Title V Permit.

84. Beginning in 2011, Defendant repeatedly failed to operate within the pressure drop range of 4.0 and 10.0 inches of water or a range established during the latest stack test, and failed to take reasonable response steps to return the control device to its normal operation as expeditiously as practicable, in violation of Condition C.16(a) of its February 2010 IDD Title V Permit.

85. Defendant has violated terms and conditions of its Title V Permit, which constitutes a violation of the Title V provisions of the Act, 42 U.S.C. §§ 7661–7661f, including Section 502(a) of the Act, 42 U.S.C. § 7661a(a).

86. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996 and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461 note: Pub. L. No. 114-74, § 701, 129 Stat. 599 (2015), the United States may seek injunctive relief and civil penalties of up to $32,500 per day for each violation from March 16, 2004, through January 12, 2009; up to $37,500 per day for each such violation occurring from January 13, 2009, through November 2, 2015; and up to $102,638 per day for each such violation occurring on or after November 3, 2015.

**PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations contained in Paragraphs 1 through 86, above, the United States of America and State of Indiana respectfully request that this Court:

1.   Order Defendant to immediately comply with the Clean Air Act, the regulatory requirements cited in this Complaint, and the permits cited in this Complaint;

2.   Order Defendant to provide other appropriate relief consistent with the Clean Air Act, including requiring Defendant to install an additional baghouse to control emissions from the Facility's LMS, monitor emissions from the Facility, operate within its pressure drop range, maintain its scrubber water flow rate, and properly monitor its emissions from its EAFs.

3.   Assess civil penalties against Defendant for up to the amounts provided in the applicable statutes; and

4.   Grant the United States and Indiana such other relief as this Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

JEAN E. WILLIAMS
Action Assistant Attorney General
Environment and Natural Resources Division

/s/ *Kristin M. Furrie*
KRISTIN M. FURRIE
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-6515
(202) 616-6584
kristin.furrie@usdoj.gov


GARY T. BELL
Acting United States Attorney
Norther District of Indiana

Wayne T. Ault
Assistant United States Attorney
Northern District of Indiana

OF COUNSEL:

SUSAN TENNENBAUM
Associate Regional Counsel
United States Environmental Protection Agency
Region 5
77 West Jackson Blvd.
Chicago, IL 60604

FOR THE STATE OF INDIANA

THEODORE E. ROKITA
Indiana Attorney General

By:    */s/ Courtney L. Abshire*
COURTNEY L. ABSHIRE
Deputy Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
Courtney.Abshire@atg.in.gov